TATEL, Circuit Judge,
concurring in part and dissenting in part:
Michelle Hoyte, Director of Quality Audits for the American Red Cross, discovered that the organization had mishandled hundreds of units of blood destined for human transfusion and was hiding its mistake from the government. Under a consent decree the Red Cross had signed with the government, this deception authorized the government to impose substantial fines on the organization. Hoyte urged her supervisors to report what had occurred, ultimately scheduling a meeting with a Senior Vice President to discuss her concerns. But the day before the meeting, Hoyte’s supervisor fired her because of her actions.
Acknowledging these sordid allegations, the court nevertheless concludes that Hoyte failed to state a retaliation claim under the False Claims Act (FCA), 31 U.S.C. § 3729 et seq., because she never alleged that the Red Cross actually filed a false claim. The Supreme Court has made clear, however, that “a well-pleaded retaliation complaint need not allege that the defendant submitted a false claim.” Graham County Soil & Water Conservation Dist. v. United States ex rel. Wilson, 545 U.S. 409, 416, 125 S.Ct. 2444, 162 L.Ed.2d 390 (2005) (emphasis added). Rather, as I demonstrate below, plaintiffs need only show they reasonably believed their employer violated the FCA — a standard Hoyte plainly satisfies. I therefore respectfully dissent from Part II.B. of the court’s opinion.
Congress enacted the FCA to prevent fraud against the government. Because “[detecting fraud is usually very difficult without the cooperation of individuals who *71 are either close observers or otherwise involved in the fraudulent activity,” S.Rep. No. 99-345, at 4 (1986), reprinted in 1986 U.S.C.C.A.N. 5266, 5269, Congress included several provisions in the FCA to encourage whistleblowers, see, e.g., 31 U.S.C. § 3730(d) (allowing whistleblowers to receive a portion of any recovery by the government based on information they provide). Relevant here, 31 U.S.C. § 3730(h) protects whistleblowers from retaliation by their employers:
Any employee who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment by his or her employer because of lawful acts done by the employee on behalf of the employee or others in furtherance of an action under this section, including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section, shall be entitled to all relief necessary to make the employee whole.

Id.

As we explained in United States ex rel. Yesudian v. Howard University, 153 F.3d 731 (D.C.Cir.1998), to prevail on a whistle-blower claim “an employee must demonstrate that: (1) he engaged in protected activity, that is, ‘acts done ... in furtherance of an action under this section’; and (2) he was discriminated against ‘because of that activity.” Id. at 736 (quoting 31 U.S.C. § 3730(h)) (omission in original). To satisfy the first requirement — the one the court believes Hoyte failed to meet— “it is sufficient that a plaintiff be investigating matters that reasonably could lead to a viable False Claims Act case.” Id. at 740 (citation and internal quotation marks omitted). As the Supreme Court has made clear, this does not mean that at the time the employee engaged in the investigative conduct there had to be a reasonable possibility that she would prevail on an FCA claim, for an employee can prevail on a retaliation claim even if the facts ultimately make it impossible for any underlying FCA claim to succeed. See Graham County, 545 U.S. at 416, 125 S.Ct. 2444 (stating that section 3730(h) “protects an employee’s conduct even if the target of an investigation or action to be filed was innocent”); id. at 416 n. 1, 125 S.Ct. 2444 (“[P]roving a violation of § 3729 is not an element of a § 3730(h) cause of action.”).
Thus, instead of requiring an actual possibility of success on the underlying FCA claim, Yesudian holds only that the employee must have reasonably believed her investigative acts could lead to a viable FCA claim. Three of our sister circuits have described the test this way: “[T]he relevant inquiry to determine whether an employee’s actions are protected under § 3730(h) is whether: ‘(1) the employee in good faith believes, and (2) a reasonable employee in the same or similar circumstances might believe, that the employer is committing fraud against the government.’ ” Fanslow v. Chicago Mfg. Ctr., Inc., 384 F.3d 469, 480 (7th Cir.2004) (quoting Moore v. Cal. Inst. of Tech. Jet Propulsion Lab., 275 F.3d 838, 845 (9th Cir.2002)); accord Wilkins v. St. Louis Housing Auth., 314 F.3d 927, 933 (8th Cir.2002). The FCA’s legislative history confirms that this test mirrors what Congress intended. The Senate Report accompanying the FCA’s retaliation provision explains that for an employee to be protected by the Act, “the employer would not have to be proven in violation of the False Claims Act,” but “the actions of the employee must result from a ‘good faith’ belief that violations exist.” S.Rep. No. 99-345, at 35, reprinted in 1986 U.S.C.C.A.N. at 5300; see also Graham County, 545 U.S. at 416, 125 S.Ct. 2444 (“[A] well-pleaded retaliation complaint need not al *72 lege that the defendant submitted a false claim.”).
Properly understood then, the question before us is this: could Hoyte have reasonably believed that the Red Cross had violated the FCA? The answer is plainly yes.
The FCA makes it illegal to “knowingly make[], use[], or eause[] to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government.” 31 U.S.C. § 3729(a)(7). The consent decree the Red Cross signed with the government required the organization to disclose certain types of blood handling errors — such as the ones alleged here — and failure to do so authorized the government to impose substantial fines. Thus, Hoyte could reasonably have believed that by hiding its blood handling errors, the Red Cross was attempting “to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government.” Id. To be clear, I take no position on whether the Red Cross actually violated section 3729(a)(7); I maintain only that Hoyte could reasonably have believed that the Red Cross violated the statute by hiding this information.
Even were the reasonableness of Hoyte’s belief debatable, I would give her the benefit of the doubt, for several factors counsel a generous approach in deciding whether an FCA retaliation plaintiffs beliefs were reasonable. The first is the statute’s plain text, which requires only that the act the employee engaged in was somehow “in furtherance of an action under this section,” 31 U.S.C. § 3730(h) (emphasis added), not “an action that is reasonably likely to succeed,” or even “a non-frivolous action.” See Graham County, 545 U.S. at 416, 125 S.Ct. 2444 (“A retaliation plaintiff ... need prove only that the defendant retaliated against him for engaging in ‘lawful acts done ... in furtherance of an FCA ‘action filed or to be filed,’ language that protects an employee’s conduct even if the target of an investigation or action to be filed was innocent.” (quoting 31 U.S.C. § 3730(h)) (second omission in original)). Thus, the statute itself imposes no requirement — indeed, it includes no suggestion — that an employee’s underlying FCA claim must be even remotely viable to support a retaliation claim. Although courts, including this one, have nonetheless imposed this requirement to discourage frivolous claims, see Yesudian, 153 F.3d at 740, we should avoid reading into the statute any more than is absolutely necessary to achieve this goal, and a minimal reasonableness requirement will suffice. Requiring anything more would— without any basis in the statute — often leave employees unprotected even when they acted in good faith to prevent fraud against the government. Such a result would directly contravene the FCA’s goal of “encourag[ing] any individual knowing of Government fraud to bring that information forward.” S.Rep. No. 99-345, at 2, reprinted in 1986 U.S.C.C.A.N. at 5267.
Moreover, we must keep in mind that nearly all employees who investigate and bring fraud claims are laypeople, not lawyers. Expecting laypeople to know with any degree of certainty whether their employers’ actions violate the FCA’s often vague provisions is simply unrealistic, especially when courts themselves disagree over what constitutes a viable FCA claim. Compare United States ex rel. Bahrani v. Conagra, Inc., 465 F.3d 1189, 1201 (10th Cir.2006) (holding that the term “obligation” in the FCA includes “instances in which a party is required to pay money to the government, but, at the time the obligation arises, the sum has not been precisely determined”), with United States v. Q Int’l Courier, Inc., 131 F.3d 770, 774 (8th Cir.1997) (“[A]n obligation under the *73 meaning of the False Claims Act[] must be for a fixed sum that is immediately due”)- As we said in the analogous context of Title YII retaliation claims, “a layperson should not be burdened with the ‘sometimes impossible task’ of correctly anticipating how a given court will interpret a particular statute.” Parker v. Baltimore & Ohio R.R., 652 F.2d 1012, 1020 (D.C.Cir.1981) (quoting Berg v. La Crosse Cooler Co., 612 F.2d 1041, 1045 (7th Cir. 1980)). Thus, when deciding whether a plaintiffs beliefs were reasonable, we must put ourselves in the layperson’s shoes, for “[t]here is no suggestion in the [FCA’s] legislative history that Congress meant to extend protection only to lawyers, or to others only after they have consulted with lawyers.” Yesudian, 153 F.3d at 741.
Given these considerations, it becomes even clearer that Hoyte’s belief was reasonable. The court holds to the contrary, but its reasons for doing so are unpersuasive.
The court first states that no one could have thought the Red Cross violated the FCA because “[t]he Consent Decree imposed no obligation on [the Red Cross] to tender money or property to the Government but only to follow the prescribed blood handling and reporting requirements.” Maj. Op. at 67. The consent decree, however, expressly authorized the government to fine the Red Cross if it failed to disclose information like the blood mishandling incident that allegedly occurred here. Am. Consent Decree of Permanent Inj., United States v. Am. Nat’l Red Cross, Civ. No. 93-0949, at 52 (D.D.C. Apr.15, 2003). Thus, at the time Hoyte began pressuring her superiors to report the mistake, the government already had the authority to fine the Red Cross — all it needed was to know of the Red Cross’s error, precisely the information the Red Cross hid. Again, I take no position on whether this means the Red Cross actually violated section 3729(a)(7) by lying to avoid an obligation to the government, but it certainly made it reasonable for Hoyte to believe as much.
The court next says there was no obligation here because the Red Cross “is in the same position as any regulated entity subject to possible sanctions for violating an administrative requirement and we made clear in Yesudian that an unassessed potential penalty for regulatory noncompliance does not constitute an obligation that gives rise to a viable FCA claim.” Maj. Op. at 67. I would agree if the Red Cross had only violated federal statutes or regulations governing blood handling. But the Red Cross violated a consent decree it had entered with the government, and as we have repeatedly held, “a consent decree ... is essentially a contract.” Segar v. Mukasey, 508 F.3d 16, 21 (D.C.Cir.2007) (citation omitted). Given that the Red Cross was violating a contract with the government, Hoyte could reasonably have believed the organization was violating the FCA, for courts have universally held that “a contractual obligation falls within the scope of § 3729(a)(7).” Bahrani, 465 F.3d at 1204; see also, e.g., Am. Textile Mfrs. Inst., Inc. v. The Limited, Inc., 190 F.3d 729, 741 (6th Cir.1999) (“§ 3729(a)’s definition of ‘obligation’ certainly includes those arising from ... breaches of government contracts.... ”).
Third, the court states that “[u]nder no reasonable interpretation of the statutory language can [the Red Cross] be deemed to have had an ‘obligation to pay or transmit money ... to the Government,’ as section 3729(a)(7) requires.” Maj. Op. at 68. But this ignores a key part of the statute. The reverse false claims provision prohibits making a false statement to “conceal, avoid, or decrease an obligation to pay or transmit money or property to *74 the Government.” 31 U.S.C. § 3729(a)(7) (emphasis added). Hoyte’s very allegation is that the Red Cross was attempting to avoid paying a fine to the government by hiding a blood handling error the consent decree required it to report.
Finally, the court asserts that “under Yesudian Hoyte’s investigation could not reasonably lead to a viable reverse false claim action under section 3729(a) (so as to support a whistleblower claim under section 3730(h)) because the activity she claims to have been investigating did not constitute an attempt to ‘conceal, avoid, or decrease an obligation to tender money or property’ to the Government.” Maj. Op. at 70. But this is no different from Yesu-dian itself, where we allowed the plaintiffs whistleblower claim even though he never proved that “the activity [he] claim[ed] to have been investigating ... constitute^] an attempt to ‘conceal, avoid, or decrease an obligation to tender money or property’ to the Government.” Id.; see also Yesudi-an, 153 F.3d at 740-41 (stating that Yesu-dian’s retaliation claim could proceed even without “evidence ... necessary to prove a False Claims Act case”). And it again ignores the Supreme Court’s directive in Graham County that “a well-pleaded retaliation complaint need not allege that the defendant submitted a false claim.” 545 U.S. at 416,125 S.Ct. 2444.
In sum, the Red Cross fired Hoyte for acting on her good faith, reasonable belief that the organization had violated the FCA by attempting to “avoid ... an obligation to pay or transmit money ... to the Government.” 31 U.S.C. § 3729(a)(7). Because the FCA requires nothing more to state a retaliation claim, I would reverse the district court’s dismissal of Hoyte’s claim.